IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DANIEL W. PHOENIX,**

    **Plaintiff,**

**v.**                                                                            **Civil Action No. 3:23cv276**

**HAROLD CLARKE,** *et al.,*

    **Defendants.**

**MEMORANDUM OPINION**

Daniel W. Phoenix, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action.[1] Mr. Phoenix contends that Defendants[2] denied him adequate medical care with respect to an elbow and shoulder injury. The matter is before the Court on the Second Particularized Complaint, (ECF No. 23), and the Motion to Dismiss filed by Defendants Clarke, Amonette, Herrick, Oates, Miller, and Mrs. J. Harris in Operations ("Defendants, (ECF No. 29)). Defendants and the Court provided Mr. Phoenix with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). (ECF Nos. 29-1, 53.) Mr. Phoenix has filed a Response. (ECF

---

[1] The statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

[2] The Defendants are Harold Clarke, Director of the Virginia Department of Corrections ("VDOC"); Dr. Mark Amonette, Chief Medical Director of the VDOC; Steven Herrick, Health Services Director; Warden Miller; Assistant Warden J.D. Oates; Operations Mrs. J. Harris; Dr. Alvin Harris; Dr. Friend; Dr. K. Sharma; NP Marrano; Dr. Hensroth; RN Schnur, Health Authority; and, RN. T. Powell, Building Nurse Manager.

No. 39, 54.) For the reasons stated below, the Motion to Dismiss, (ECF No. 29), will be GRANTED.

## I. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, therefore, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it does not act as the inmate's advocate, *sua sponte* developing statutory and constitutional claims the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. Summary of Allegations

### A.  General Allegations about Medical Care

In his Second Particularized Complaint, Mr. Phoenix contends that "[w]hile working out on the rec yard on December 9, 2020, [he] injured his left elbow and left shoulder," and heard a "a loud 'pop' when the injury occurred." (ECF No. 23 ¶ 5.)[3] Mr. Phoenix was seen by Dr. Friend that same day, and Dr. Friend prescribed him Tylenol. (ECF No. 23 ¶ 6.) Between December 2020, and May of 2021, Mr. Phoenix continued to have pain and trouble moving his arm and was seen at least five times by a nurse and Dr. Harris but was only prescribed more Tylenol and Motrin. (ECF No. 23. ¶¶ 7–9.) On May 20, 2021, Mr. Phoenix "was given an MRI of his left humorous," and later that day, Dr. Harris provided Mr. Phoenix with a sling, noted

---

[3] The Court employs the pagination assigned by the CM/ECF docketing system. The Court corrects the capitalization, punctuation, spelling and omits the emphasis, and the unnecessary parentheses and quotation marks in Mr. Phoenix's submissions.

decreased mobility in his arm, and referred him to an onsite orthopedic specialist. (ECF No. 23 ¶ 9.) On May 21, 2021, Dr. Hensroth diagnosed Mr. Phoenix with a sprain in his left shoulder and left elbow, but ordered no tests. (ECF No. 23 ¶ 10.) On May 27, 2021, Dr. Harris saw Mr. Phoenix again, noted that Mr. Phoenix was experiencing continued pain and numbness, and reordered Mr. Phoenix to be seen by Dr. Hensroth. (ECF No. 23 ¶ 11.)

On June 3, 2021, Dr. Hensroth ordered an MRI because "he suspected a torn bicep [t]endon rupture" but "[t]his [was] only after [Mr.] Phoenix [was] taken to Ortho VA and seen by specialist Dr. Dalton who ordered an MRI of the left elbow and left shoulder." (ECF No. 23 ¶ 12.) Medical saw Mr. Phoenix eight times for his elbow and shoulder between June 16, 2021, and September 1, 2021, and presumably on September 1, 2021, he had an "MRI on his left elbow only which revealed a 50% torn bicep tendon." (ECF No. 23 ¶ 13.) On September 30, 2021, Mr. Phoenix was seen by Dr. Hensroth who ordered an elbow sleeve but no surgery at that time. (ECF No. 23 ¶ 14.) Between September 16, 2021 and December 1, 2021, Mr. Phoenix was seen by medical six times for his elbow and shoulder. (ECF No. 23 ¶ 15.) On December 1, 2021, Dr. Sharma sent Mr. Phoenix back to Dr. Henrsroth who indicated that Mr. Phoenix should "observe the left arm . . . ." (ECF No. 23 ¶ 15.)

On October 1, 2021, Mr. Phoenix had an administrative meeting with Asst. Warden Oates, Mrs. Harris (Operations), Dr. Sharma, RN Schnur, "and others" so Mr. Phoenix could tell them that he was in pain and had "not receiv[ed] surgical remedy or corrections," and "no one change[d] the course of his care." (ECF No. 23 ¶ 16.) On October 22, 2021, Mr. Phoenix had a "direct meeting with Asst. Warden Oates [and] he was shown medical records referencing the shoulder and the elbow and lack of care." (ECF No. 23 ¶ 30.) Asst. Warden Oates, Dr. Harris, RN Schnur, RN Powell, and Mrs. Harris were also present at an administrative meeting with Mr.

4

Phoenix on December 22, 2022.[4] (ECF No. 23 ¶ 30.) "[D]espite knowing this information [Oates] chose to not correct [Mr.] Phoenix's medical care." (ECF No. 23 ¶ 30.)

On February 3, 2022, a nurse saw Mr. Phoenix for sick call for his shoulder and noted that the wrong shoulder was hurt, so Dr. Sharma wrote an order for an x-ray for the wrong shoulder. (ECF No. 23 ¶ 17.) On April 15, 2022, Mr. Phoenix went to a specialist appointment at Ortho Virginia. (ECF No. 23 ¶ 18.) At that appointment, Dr. Dalton determined that Mr. Phoenix needed surgery to repair the tendon and his office scheduled the surgery. (ECF No. 23 ¶ 18.) On April 28, 2022, Mr. Phoenix had surgery to correct his bicep tendon at Ortho Virginia's surgery center. (ECF No. 23 ¶ 19.) On May 24, 2022, Mr. Phoenix had a follow-up appointment with Ortho Virginia, and he reported "mild numbness in the distal forearm." (ECF No. 23 ¶ 20.) Mr. Phoenix attended physical therapy twenty-eight times between May 24, 2022 and September 27, 2023 and "his elbow improve[d]" but he continued to report to the therapists "numbness in his arm and hand with continued pain his shoulder." (ECF No. 23 ¶ 21.)

On October 18, 2023, Mr. Phoenix had an outside specialist appointment with VCU neurosurgeon Dr. Grere who ordered Mr. Phoenix to see VCU orthopedics. (ECF No. 23 ¶ 23.) Between October 18, 2023 and October 27, 2023, Mr. Phoenix had an x-ray of his shoulder, and on October 27, 2023, Dr. Trogoski ordered Mr. Phoenix to be seen by VCU orthopedics. (ECF No. 23 ¶ 24.) On December 5, 2023, Mr. Phoenix saw a VCU orthopedic surgeon who ordered an MRI, Tylenol, and a left sling. (ECF No. 23 ¶ 25.) Mr. Phoenix did not receive the sling. (ECF No. 23 ¶ 25.) On December 19, 2023, Mr. Phoenix had an MRI of his shoulder. (ECF No. 23 ¶ 26.)

---

[4] The Court believes that Mr. Phoenix intended to state that the meeting was on December 22, 2021, not 2022.

On February 21, 2024, Mr. Phoenix returned to VCU for an MRI follow up and the doctor recommended full left shoulder replacement surgery. (ECF No. 23 ¶ 27.) On April 12, 2024, Mr. Phoenix had "a full shoulder replacement surgery." (ECF No. 23 ¶ 28.) Mr. Phoenix blames this alleged delay in receiving care as the reason this surgery was required. (ECF No. 23 ¶¶ 27–28.)

**B.     Grievances**

Mr. Phoenix indicates that he filed many grievances about his various medical conditions including his shoulder and elbow.[5] On July 31, 2021, Mr. Phoenix wrote a complaint "asking Asst. Warden Oates to look into why after 60 days there was no order[] for an MRI for my arm," and Assistant Warden Oates "rerouted this complaint to medical." (ECF No. 23 ¶ 37.)

On December 13, 2021, Mr. Phoenix "wrote a regular request form to Asst. Warden Oates about still not receiving proper medical care" and "he reassign[ed] the issue to [RN] Schnur . . . [and] she stated I need to be specific despite her having access to my medical records." (ECF No. 23 ¶ 41.)

On May 3, 2022, Mr. Phoenix wrote a complaint "stat[ing] that 1.5 years have pas[sed] since I hurt my arm and still have not received help through the grievance system or from medical and Operations Harris states that if I am not happy or disagree with the disposition of a grievance appeal to appeal it in accordance with policy." (ECF No. 23 ¶ 42.)

On April 20, 2023, Mr. Phoenix "wrote a regular request to Warden Miller about my lack of medical care and the deliberate indifference of the medical and administrative staff." (ECF No. 23 ¶ 46.) Mr. Phoenix "personally met with [Warden Miller] on 4/25/23 in which we discussed my lack of medical care which included my arm issues. He responded [that] all of my

---

[5] The Court only includes a description of the grievance material that Mr. Phoenix directed to the Defendants who filed the Motion to Dismiss before the Court.

medical care is being addressed." (ECF No. 23 ¶ 46.) On May 19, 2023, Mr. Phoenix wrote a complaint complaining about "Warden Miller's deliberate indifference to my serious medical needs to which Operations Harris wrote there is no validity to my claims." (ECF No. 23 ¶ 47.)

### C. Letters to Staff

As early as November 2021, Mr. Phoenix began threatening his medical treatment team and the administrative staff with litigation. On November 1, 2021, Mr. Phoenix wrote a certified letter to Clarke, Amonette, Oates, and Mrs. Harris (Operations) "for breach of contract and asking for proper medical services or I would be forced into litigation" and "discuss[ing] the lack of care for my shoulder and elbow issues." (ECF No. 23 ¶ 53.) On March 29, 2022, Mr. Phoenix wrote a letter to Oates, Clarke, and Amonette "about the violations to [his] rights stemming from improper medical care" and mentioning his arm. (ECF No. 23 ¶ 54.) On June 31, 2022, Mr. Phoenix wrote a letter to Warden Miller "asking for corrections to my medical care." (ECF No. 23 ¶ 55.) On September 27, 2022, Mr. Phoenix wrote a certified letter to Oates, Miller, Harris, Clarke, and Amonette "about the further breach of contract and lack of medical services." (ECF No. 23 ¶ 57.) On October 25, 2022, Mr. Phoenix "wrote a letter to the Health Services Director" and Amonette and Clarke "setting the record straight as again I am afforded no help." (ECF No. 23 ¶ 56.) On November 3, 2022, Mr. Phoenix wrote a letter to "Operations Manager Harris explaining that I am not receiving proper help from medical or the administrative staff," and this letter was also mailed to Oates, Miller, Clarke, and Amonette. (ECF No. 23 ¶ 58.)

On February 24, 2023, Mr. Phoenix wrote a letter to Oates, Harris, and Clarke "asking for help with several medical issues which included my arm." (ECF No. 23 ¶ 60.) On March 23, 2023, Mr. Phoenix "wrote a certified signature required letter to Mark Amonette about the lack

of medical care I was receiving." (ECF No. 23 ¶ 61.) According to Mr. Phoenix, no care, help, or correction to his medical care was offered as a result of his letters.

### D. Mr. Phoenix's Claims

Mr. Phoenix fails to set forth one clear set of claims for relief in his Second Particularized Complaint. Instead, he has sections entitled "CIVIL RIGHTS VIOLATED AND THE DEFENDANTS ALLEGEDLY RESPONSIBLE", (ECF No. 23, at 13–16), "LEGAL THEORIES OF THIS COMPLAINT", (ECF No. 23, at 16–17), and then finally, "COUNTS AND CLAIMS OF THIS COMPLAINT", (ECF No. 23, at 17–19). The Court construes Mr. Phoenix to raise the following claims for relief.

> **Claim One:** Defendants Clarke, Amonette, and Herrick "were and remain deliberately indifferent to [Mr.] Phoenix's serious elbow and shoulder injuries for failing to provide the necessary corrections to his medical care once they were notified [that] he was not receiving the proper medical care" in violation of the Eighth Amendment. (ECF No. 23 ¶ 83.)
>
> **Claim Two:** Defendants Miller, Oates, and Mrs. Harris (Operations) "were and remain deliberately indifferent to [Mr.] Phoenix's serious medical shoulder and elbow conditions for failing to provide the necessary corrections to his medical care, failing to provide timely access to medical testing and untimely access to surgical remedies once notified" through grievances and letters in violation of the Eighth Amendment. (ECF No. 23 ¶ 84.)
>
> **Claim Three:** Defendants Dr. Harris, Dr. Friend, Dr. Sharma, Dr. Hensroth, NP Marrano, RN Schnur, and RN Powell "are and remain deliberately indifferent to my serious medical shoulder and elbow conditions through their actions of not providing timely access to medical testing, timely access to surgical corrections, and failing to provide the proper standard of medical care" in violation of the Eighth Amendment. (ECF No. 23 ¶ 85.)

Mr. Phoenix seeks a large sum of damages as relief. (ECF No. 23 at 19–20.)

## III. Analysis

### A. No Supervisory Liability

In order to state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under color of state law deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citations omitted). To state a legally sufficient claim for an alleged violation of a federal constitutional right, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* Accordingly, the plaintiff must allege facts that affirmatively show "that the official charged acted personally in the deprivation of the plaintiff['s] rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (internal quotation marks omitted); *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability is "personal, based upon each defendant's own constitutional violations").

As a preliminary matter, Mr. Phoenix only identifies Defendant Herrick in the caption and then later in Claim One. (*See generally* ECF No. 23.) Mr. Phoenix fails to allege facts indicating that Defendant Herrick personally participated in any violation of his rights.[6] *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for

---

[6] At most, Mr. Phoenix indicates that he "wrote a certified letter to the Health Services Director setting the record straight about as again I am afforded no help . . . ." (ECF No. 23 ¶ 56.) Even generously construing the Second Particularized Complaint as properly naming Defendant Herrick based on this one vague allegation, as discussed below in conjunction with the other Defendants, Mr. Phoenix fails to plausibly allege an Eighth Amendment claim against him.

his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." (citing *Brzozowski v. Randall*, 281 F. Supp. 306, 312 (E.D. Pa. 1968))). Thus, any claim against Defendant Herrick will be DISMISSED WITHOUT PREJUDICE.

Second, to the extent that Mr. Phoenix intends to impose liability on Defendants solely because of their role in VDOC administration[7] under a theory of *respondeat superior*, he fails to state a claim for relief. *Iqbal*, 556 U.S. at 676.[8] Contrary to Mr. Phoenix's suggestion, none of the Defendants are liable simply because they supervised other individuals who may have violated his rights. *See Vinnedge*, 550 F.2d at 928. Accordingly, any claim based on supervisory liability will be dismissed.[9]

---

[7] According to Mr. Phoenix, Harold Clarke, is the Director of the VDOC; Dr. Mark Amonette is the Chief Medical Director of the VDOC; Steven Herrick is the Health Services Director of the VDOC; Warden Miller and Assistant Warden J.D. Oates are the Warden and Assistant Warden at Deerfield Correctional Center ("Deerfield"). (ECF No. 1, at 1.) Mr. Phoenix only indicates that Mrs. J. Harris is the Operations Manager at Deerfield. (*See, e.g.*, ECF No. 23 ¶ 58.)

[8] To the extent that Mr. Phoenix contends that Defendants are somehow liable on a theory of supervisory liability, that claim would fail. To show that a supervising officer failed to fulfill his duties to protect an inmate by ensuring his subordinates act within the law, the inmate must show that:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)) (internal quotation marks omitted) (citations omitted). Mr. Phoenix fails to allege facts that support any one of these three factors.

[9] To the extent that Mr. Phoenix argues that Defendants were responsible for policies or procedures that led to his allegedly inadequate medical care, such a claim would fail. To state such a claim, Mr. Phoenix must plead facts indicating that: (1) Defendants had an official policy

10

### B. No Violation of Mr. Phoenix's Eighth Amendment Rights

#### 1. Eighth Amendment Standard

To allege an Eighth Amendment claim, an inmate must allege facts that indicate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

---

or custom of providing unconstitutional medical care; (2) that this official policy or custom reflected deliberate indifference to Mr. Phoenix's Eighth Amendment rights; and, (3) that this policy or custom caused or contributed to the cause of Mr. Phoenix's allegedly inadequate medical care. *Spell v. McDaniel*, 824 F.2d 1380, 1385–88 (4th Cir. 1987). Mr. Phoenix again fails to allege any one of these three factors.

11

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977). Moreover, "[i]t may not be seriously contended that any prisoner detained for however short a period is entitled to have all his needed elective medical care performed while in custody . . . ." *Kersh v. Bounds*, 501 F.2d 585, 589 (4th Cir. 1974).

12

## 2. Defendants Were Not Deliberately Indifferent

In Claims One and Two, Mr. Phoenix indicates that Defendants are liable to him because he notified them of his ongoing belief that he was receiving inadequate medical care through grievances, letters, and administrative meetings, and they purportedly failed to remedy it. Mr. Phoenix wrote various grievances and letters to Defendants as outlined above.[10] While an inmate's letters to prison administrators may establish a basis for § 1983 liability, the plaintiff must allege facts that plausibly posit "that the communication, in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety.'" *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mr. Phoenix must allege that Defendants "knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Id.* at 994 (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

First, with respect to the letters, while Mr. Phoenix indicates that he mailed letters to these administrators he never indicates that he received a response. Nevertheless, assuming for the purposes of the Motion to Dismiss, that the letters were received, Mr. Phoenix simply states that the intended recipients of the letters failed to change or intervene in his medical care generally. Moreover, Mr. Phoenix describes the letters as notifying Defendants about vague issues such as "breach of contract" and "setting the record straight as I again I am afforded no help," and the "lack of care" he was receiving. (ECF No. 23 ¶¶ 56, 57.) While Mr. Phoenix indicates that he mentioned his shoulder and elbow in his letters, this one particular complaint

---

[10] Because the allegations against each Defendant are so similar and may be dismissed for the same reasons, the Court believes it would be overly repetitive to discuss each Defendant's liability separately.

13

was undoubtedly just one in a litany of other complaints about his medical care. Mr. Phoenix's allegations fall short of permitting the conclusion that his letters placed Defendants on sufficient notice of an excessive risk of harm to his health or safety with respect to his shoulder and elbow. *See Vance*, 97 F.3d at 994. As such, Mr. Phoenix's limited factual allegations against Defendants fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 683). For this reason alone, Mr. Phoenix's Eighth Amendment claims against Defendants based on the letters may be dismissed.

With respect to the grievances, Mr. Phoenix contends that Defendant Oates referred his complaints to the Medical Department, who then addressed Mr. Phoenix's complaints. Defendant Mrs. Harris (Operations) responded to Mr. Phoenix grievance complaining that he was not receiving help through the grievance process that he could appeal any grievance response he was dissatisfied with and in response to a grievance that Warden Miller was not helping him found his grievance to be untrue. Finally, Mr. Phoenix indicates that he wrote a "regular request" to Defendant Miller and then met with him and other medical providers about his medical care generally, and that Defendant Miller determined that "all of [Mr. Phoenix's] medical care is being addressed." (ECF No. 23 ¶ 46.)

While Mr. Phoenix believes that he was receiving inadequate medical care and lodged the same complaint in his letters, grievances, and during alleged administrative meetings with staff, Mr. Phoenix's allegations reflect that he was receiving a great deal of medical care for his shoulder and arm, amongst other ailments. Defendants knew that Mr. Phoenix was frequently seen by and treated by the medical department. Between 2021 and 2024, Mr. Phoenix saw

14

medical providers at least sixty-two times,[11] received pain medication, had x-rays, two MRIs, saw an onsite orthopedist and two orthopedic specialists and a neurologist, had elbow surgery, had twenty-eight physical therapy sessions, and then had a complete shoulder replacement surgery. Mr. Phoenix was under the care of many medical providers including those within the institution and several outside specialists, and Defendants, who are all either in supervisory roles of the administration of the VDOC or of Deerfield Correctional Center, were entitled to rely on the medical judgment of those providers with respect to the appropriate treatment of Mr. Phoenix. *Iko*, 535 F.3d at 242 (holding that once an inmate is placed in the care of appropriate medical personnel, "a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands" (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir 2004))).

Mr. Phoenix faces an onerous task in alleging deliberate indifference in the present circumstances because reliance upon the expertise of prison medical providers in treating inmates is generally appropriate for supervisory officials, such as Defendants, in their role as VDOC or Deerfield administrators. To overcome such reliance, Mr. Phoenix must allege facts indicating that Defendants knew that the care provided by medical personnel was so obviously incompetent that it posed a substantial risk of harm to his health. *See Miltier*, 896 F.2d at 854–55. Quite simply, he has not. While Mr. Phoenix believes that his medical care was inadequate and disagreed with the course of treatment, his own allegations reflect that his medical care was plainly not so obviously incompetent as to pose a substantial risk of harm to his health. Rather, Mr. Phoenix's allegations show that he received an extraordinary amount of care for his shoulder

---

[11] Defendants note that Mr. Phoenix "admitted that he saw medical providers, either doctors or nurses, over sixty-two times." (*See* ECF No. 30, at 6.)

and elbow injuries.[12] Defendants, as supervisory staff, were entitled to rely on the medical opinions and course of treatment prescribed by the many medical providers and specialists. Accordingly, Mr. Phoenix fails to plausibly allege that Defendants were deliberately indifferent to his shoulder and elbow injuries. In sum, Mr. Phoenix fails to state an Eighth Amendment claim against Defendants and Claims One and Two will be DISMISSED.

## IV. Conclusion

Accordingly, the Defendants' Motion to Dismiss, (ECF No. 29), will be GRANTED. Claims One and Two will be DISMISSED for failure to state a claim and as frivolous. Any

---

[12] During the same time frame that Mr. Phoenix complained about his elbow and shoulder Mr. Phoenix also was being seen by medical for a variety of other complaints. Mr. Phoenix has filed so many lawsuits in this division about his allegedly deficient medical care that it is hard to keep track of them. Nevertheless, for example, Mr. Phoenix filed lawsuits naming many of the same Defendants complaining that he was denied adequate medical care for alleged Celiac's disease, *see e.g.*, *Jamison v. Robinson*, No. 3:23cv346 (E.D. Va. May 24, 2023); for hearing loss and tinnitus, *Phoenix v. Clarke*, No. 3:23cv316 (E.D. Va. May 10, 2023); for "pulmonary condition and breathing issues," *Jamison v. Clarke*, No. 3:23cv277 (E.D. Va. filed Apr. 26, 2023), ECF No. 1, at 1; "nerve pain and joint pain in his back and neck," *Jamison v. Clarke*, No. 3:23cv278 (E.D. Va. Apr. 26, 2023), ECF No. 1, at 5; and, a "serious medical ankle injury," *Jamison v. Herrick*, No. 3:23cv335 (E.D. Va. May 18, 2023), ECF No. 1, at 1. In one lawsuit alone, Mr. Phoenix claimed that he had "celiac disease, inguinal hernia, umbilical hernia, serious neck and back pain with nerve pain, hemroids[sic], pain management, dermatitis hepiformas, foot problems, malnutrition, tinnitus in ears, dental erosion, and mental problems." *Jamison v. Northam*, No. 3:20cv339 (E.D Va. May 13, 2020), ECF No. 1, at 8. In addition, Mr. Phoenix also purportedly had "headaches . . . dizziness." *Jamison, v. Vital Core Health Strategies*, No. 2:23cv357 (E.D. Va. May 31, 2023), ECF No. 1, at 3.) From his many complaints, it is evident that medical providers and VDOC staff have expended a great deal of time on Mr. Phoenix's abundant medical issues. The Court reminds Mr. Phoenix that the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable," *Bowring*, 551 F.2d at 48, and he has no right "to have all his needed elective medical care performed while in custody . . . ." *Kersh*, 501 F.2d at 589.

16

claim against Defendants Clarke, Amonette, Herrick, Oates, Miller, and Mrs. J. Harris will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 1/21/2025  
Richmond, Virginia

/s/  
M. Hannah Lauck  
United States District Judge